IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, §<br>*Plaintiff* §<br>§<br>-vs- §<br>§<br>ALAMO CARD HOUSE, LLC, AND §<br>VALARIE M. HOWARD, §<br>*Defendants* § | SA-20-CV-01094-XR |

# ORDER

On this date, the Court considered Plaintiff G&G Closed Circuit Events, LLC's motion for default judgment against Defendant Alamo Card House, LLC (ECF No. 25). After careful consideration, the Court **GRANTS** the motion.

## BACKGROUND

Plaintiff held exclusive commercial distribution rights to the broadcast of the Gennady Golovkin v. Saul Alvarez telecast (the "Event") nationwide on September 16, 2017. ECF No. 1 ¶ 6. The Event broadcast originated via satellite and was electronically coded or "scrambled" before being retransmitted to cable systems and satellite television companies via satellite signal. *Id.* ¶ 4.

Plaintiff entered into agreements with various commercial establishments in Texas that allowed them, for a fee, to exhibit the Event to their patrons. *Id.* ¶ 8. The sublicense fee for the Event was based on the capacity of the establishment. For example, if a commercial establishment had a maximum fire code occupancy of 200 persons, the commercial sublicense fee for the Event would have been $5,000.00. ECF No. 25-1, Ex. A (Aff. of Thomas P. Riley) ¶ 7; *id.*, Ex. A-3 (Rate Card).

In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event was electronically coded or scrambled and was not

available to or intended for the use of the general public. ECF No. 25-1, Ex. A, Riley Aff. ¶ 6. If a commercial establishment was authorized by Plaintiff to receive the respective Event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal or the establishment's cable or satellite provider would be notified to unscramble the reception, depending upon the establishment's equipment and provider. *Id.*

On the night of the Event, Arturo Trevino, an auditor working on Plaintiff's behalf, entered Alamo Card House (the "Establishment"), a commercial establishment located at 10311 Perrin Beitel Road in San Antonio, Texas. ECF No. 25-1, Ex. A-2 ("Trevino Aff.") at 1. According to Trevino, the Establishment was charging a cover charge of $8.00, but would only permit entry to play poker, not to watch the Event, which was being telecast on a large screen television inside. *Id.* An armed security guard outside of the Establishment confirmed that patrons were watching the Event. *Id.* During the Event, Trevino saw approximately 130 patrons inside of the Establishment, which he estimated had a capacity of approximately 200 people. *Id.*

Plaintiff filed this case on September 14, 2021, seeking monetary relief up to $110,000 pursuant to 47 U.S.C. § 605, or, alternatively, up to $60,000 pursuant to 47 U.S.C. § 553. ECF No. 1 at 5. Plaintiff named as Defendants: (1) Alamo Card House, LLC ("Alamo"), the Texas limited liability company under which the Establishment operates, and (2) Valerie Howard, the sole member of Alamo, who supervised the business activities of the Establishment and had a financial interest in its business operations. ECF No. 25-1, Ex. B (Certificate of Formation of Alamo Card House, LLC).

The Complaint alleges that Defendants failed to contract with or pay a fee to Plaintiff to obtain a proper license or authorization to show the Event at the Establishment. ECF No. 1 at 4. Instead, Plaintiff asserts that Defendants willfully intercepted or received the interstate

available to or intended for the use of the general public. ECF No. 25-1, Ex. A, Riley Aff. ¶ 6. If a commercial establishment was authorized by Plaintiff to receive the respective Event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal or the establishment's cable or satellite provider would be notified to unscramble the reception, depending upon the establishment's equipment and provider. *Id.*

On the night of the Event, Arturo Trevino, an auditor working on Plaintiff's behalf, entered Alamo Card House (the "Establishment"), a commercial establishment located at 10311 Perrin Beitel Road in San Antonio, Texas. ECF No. 25-1, Ex. A-2 ("Trevino Aff.") at 1. According to Trevino, the Establishment was charging a cover charge of $8.00, but would only permit entry to play poker, not to watch the Event, which was being telecast on a large screen television inside. *Id.* An armed security guard outside of the Establishment confirmed that patrons were watching the Event. *Id.* During the Event, Trevino saw approximately 130 patrons inside of the Establishment, which he estimated had a capacity of approximately 200 people. *Id.*

Plaintiff filed this case on September 14, 2021, seeking monetary relief up to $110,000 pursuant to 47 U.S.C. § 605, or, alternatively, up to $60,000 pursuant to 47 U.S.C. § 553. ECF No. 1 at 5. Plaintiff named as Defendants: (1) Alamo Card House, LLC ("Alamo"), the Texas limited liability company under which the Establishment operates, and (2) Valerie Howard, the sole member of Alamo, who supervised the business activities of the Establishment and had a financial interest in its business operations. ECF No. 25-1, Ex. B (Certificate of Formation of Alamo Card House, LLC).

The Complaint alleges that Defendants failed to contract with or pay a fee to Plaintiff to obtain a proper license or authorization to show the Event at the Establishment. ECF No. 1 at 4. Instead, Plaintiff asserts that Defendants willfully intercepted or received the interstate

communication of the Event—or assisted in such actions—and then unlawfully transmitted, divulged, and published said communication—or assisted in unlawfully transmitting, divulging, and publishing said communication. *Id.* Defendants then showed the Event to patrons of the Establishment without authorization, license, or permission. *Id.* The Complaint alleges that Defendants pirated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper authorization and payment, and that Defendants acted willfully and with the purpose and intent to secure a commercial advantage and private financial gain. *Id.*

On January 25, 2021, Defendant Howard filed an answer *pro se*, asserting that Alamo Card House had paid for access to the Event on a laptop and showed it on a single screen. ECF No. 10. She further asserted that Alamo Card House, a private, member-based social club, had not profited from the event because it did not charge any additional fees to its members that night and did not earn any additional revenue from alcohol sales because the club "did not allow alcohol on or around the premises." *Id.* at 2.

Defendant Alamo failed to timely answer or otherwise appear in this action[1], and the Clerk of Court entered default against Alamo on September 22, 2021. ECF No. 20. In its order directing Plaintiff to move for entry of default, the Court noted that it would consider a motion for default judgment against Alamo only after the claim against Howard had been adjudicated in order to avoid inconsistent judgments. ECF No. 18. On December 7, 2021, the Court granted Plaintiff's motion for summary judgment against Howard, awarding $25,000 in damages. ECF No. 23. To date, Defendant Alamo has not filed an answer or any other responsive pleading with the Court,

---

[1] An LLC must be represented by an attorney, and cannot be represented by an individual, even if that individual is an executive officer or managing member.

nor has it made an appearance in this case. On April 29, 2022, Plaintiff filed a motion for default judgment, which the Court now considers.

## DISCUSSION

### I. Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

### II. Analysis

#### A. Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal-question jurisdiction extends to cases in which a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988). Here, Plaintiff's action was brought in federal court, asserting "Anti-Piracy" claims

involving the Federal Communications Act of 1934 (the "Act"), pursuant to 47 U.S.C. §§ 553 and 605. Thus, Plaintiff asserts claims involving a federal question, allowing this Court to exercise federal question subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

This Court also has personal jurisdiction over the parties to this case, as Plaintiff has properly effected service of process on Alamo in accordance with Texas law. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m). The affidavit of service indicates that Alamo was served through its registered agent on October 19, 2020, approximately one month after the Complaint was filed. *See* ECF No. 6 at 2; FED. R. CIV. P. 4(h)(1)(B).

### B. Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, FED. PRAC. &

PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

I. Analysis

A. Liability of Defendant Howard Under 47 U.S.C. § 605

The Act prohibits the "[u]nauthorized interception or receipt or assistance in intercepting or receiving [cable] service" communications. 47 U.S.C. § 553(a). "Cable service" is defined as a "one-way transmission to subscribers of (i) video programming, or (ii) other programming service," and any necessary interactions allowing subscribers access to such service. 47 U.S.C. § 522(6). The Fifth Circuit, as a matter of first impression in *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, joined the majority of circuits in holding the proscriptions of § 553 apply to interceptions or receipts of wire communications, and § 605 applies when radio communications are received or intercepted. 751 F.3d 346, 352 (5th Cir. 2014).

Plaintiff's Complaint seeks damages under § 605 or, alternatively under § 553. However, it expressly states that "[t]he transmission of the Event originated via satellite." ECF No. 1 ¶ 9. Although it is unclear from Plaintiff's Complaint whether Defendants used internet, cable, or

satellite to exhibit the Program, it is plausible—and even likely, given the Establishment was equipped with a satellite dish, *see* ECF No. A-2 (photos)—that Defendants received the Program via satellite. "And when 'there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'" *J & J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020) (quoting *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996)). Thus, the Court will assess liability and damages based on violations alleged under § 605, "as the statute 'does not require identification of the precise means used to accomplish the piracy of a satellite signal.'" *Id.* at 315 (quoting *J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802–03 (10th Cir. 2016)).

The Act prohibits unauthorized interception or receipt and subsequent dissemination of radio communications so intercepted or received. *See* 47 U.S.C. § 605 (prohibiting not only unauthorized interception or receipt of radio communications but also "[u]nauthorized publication or use of communications" so acquired). Other than securing proper authorization, another exception exists. The prohibition on intercepting/receiving and disseminating (or assistance in so doing) radio communications does not apply if (1) the communications are not encrypted, and (2) a marketing system does not exist allowing individuals the opportunity to obtain authorized access. *See id.* § 605(b). Plaintiff's Complaint alleges that Defendants violated § 605 of the Act "willfully and with the purpose and intent to secure a commercial advantage and private financial gain." ECF No. 1 ¶ 13.

The Act is a strict liability statute. To establish Defendants' liability, Plaintiff must establish by a preponderance of the evidence that (1) the Event was disseminated without authorization in Defendants' Establishment; and (2) the exception to § 605 does not apply—i.e.,

7

that the Event was encrypted, and was available for Defendants' access by authorized means. Any willfulness of Defendants' conduct is relevant only to the issue of damages.

Plaintiff had the exclusive rights to exhibit the Event and to sublicense it through an agreement to commercial establishments. *Id.* ¶¶ 6–8. Plaintiff alleges that "[t]he transmission of the Event originated via satellite and was electronically coded or 'scrambled.'" *Id.* ¶ 9. Only commercial establishments that contracted with Plaintiff to broadcast the Event were provided with the electronic decoding capability and/or satellite coordinates necessary to receive the signal of the Event. *Id.* ¶ 11. According to Plaintiff's Complaint, Defendants failed to contract with Plaintiff or any of its agents to obtain the rights to broadcast the Event. *Id.* ¶ 10. Nonetheless, Defendants misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights by intercepting the Event and broadcasting it to patrons of the Establishment while avoiding proper payment to Plaintiff. *Id.* ¶¶ 12–16.

Based on the undisputed facts, Plaintiff has established by a preponderance of the evidence that the Event was disseminated at the Establishment without Plaintiff's authorization. The undisputed evidence also indicates that the exception to § 605 does not apply because the Event was encrypted, and was available for Defendants' access by authorized means. *See id.* ¶¶ 9–11; ECF No. 25-1, Ex. A, Riley Aff. ¶ 6 (describing encryption and descrambling process); *id.*, Ex. A-3 (Rate Card). Accordingly, the Court concludes that Plaintiff has demonstrated that Alamo violated the Communications Act by a preponderance of the evidence.

**B.     Damages**

Section 605 contains two damage provisions relevant to this case. First, statutory damages are prescribed "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. §

605(e)(3)(C)(i)(II). Second, if violations were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase damages "whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii).

### 1.     Statutory Damages Under Section 605(e)(3)(C)(i)(II)

Plaintiff seeks $10,000 in statutory damages premised on lost licensing fees, and compensation for being deprived of the value, benefits, and profits that may have been realized, but for Defendants' piracy of the Event. ECF No. 25 ¶ 14. As Plaintiff notes in its briefing, lost licensing fees are a mere baseline in assessing statutory damages. *Id.* at 6 n.3; *see Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (explaining how damages of mere broadcast cost would not incentivize statute compliance). This Court has previously assessed damages by looking to the number of patrons present during the unauthorized broadcast. *See J&J Sports Prods., Inc. v. Tejada*, No. 5-13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex. Mar. 4, 2014) (assessing baseline statutory damages using number of patrons established by affidavit). This "per-patron" approach is not uncommon in previous § 605 cases. *See, e.g.*, *Al-Waha Enters.*, 219 F. Supp. at 776 (stating "the per-patron approach is an appropriate starting point for calculating damages").

Here, Plaintiff submitted the affidavit of Arturo Trevino, an auditor who was present at the Establishment on the date of the Event, which states there were approximately 130 patrons present and viewing the Event on a large screen. ECF No. 25-1, Ex. A-2, Trevino Aff. at 1. Trevino further observed that the capacity of the Establishment was approximately 200 people. *Id.* According to the submitted "Rate Card" (used to calculate sub-licensing fees based on venue capacity), a

commercial establishment with a venue range of 101–200 people would be charged $5,000.00 for the legal right to broadcast the Event. ECF No. 25-1, Ex. A-3.

However, the Communications Act limits recovery of statutory damages under § 605 to $10,000.00. 47 U.S.C § 605(D)(6). Thus, the Court awards $10,000.00 in statutory damages.

### 2. Statutory Damages Under Section 605(e)(3)(C)(i)(II)

The Court finds damages for a willful violation in the amount of $15,000 appropriate based on the Establishment's approximated 130 patrons on the night of the Event, the broadcast of the Event in an urban area, and any revenue derived from the cover charge and the sale of food and beverages.

### C. Recovery of Costs and Attorney's Fees

The Act mandates a prevailing plaintiff be awarded costs and attorney's fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff submitted an affidavit from its counsel, explaining his fees and seeking a 1/3 contingent fee. Though this Court has previously awarded attorney's fees based on the lodestar method, *see Tejada*, 2014 WL 869218, at *2, a review of the case law indicates that a 1/3 contingent fee is appropriate and reasonable in a case such as this one. *J & J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014). Accordingly, the Court awards $8,333.33 in attorney's fees. The Court declines to award attorney's fees for potential post-trial and appellate services.

## CONCLUSION

Accordingly, Plaintiff's motion for default judgment (ECF No. 25) is **GRANTED** as to Defendant Alamo Card House, LLC. Plaintiff is awarded $25,000.00 in damages and $8,333.33 in attorneys' fees. A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58.

Plaintiff is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so **ORDERED**.

**SIGNED** this 24th day of May, 2022.

_____<br>
XAVIER RODRIGUEZ<br>
UNITED STATES DISTRICT JUDGE